Thomas F. DELOZIER, President the Pennsylvania Association of Tax Leagues, Inc., Tyrone Area and Individually and Albert J. Shope and James W. Hoover, Plaintiffs,

v.

TYRONE AREA SCHOOL BOARD and the Blair County Board of Elections, Huntingdon County Board of Elections and Centre County Board of Elections, Defendants.

Civ. A. No. 65–388.

United States District Court
W. D. Pennsylvania.

Oct. 29, 1965.

Thomas J. Reinstadtler, Jr., Pittsburgh, Pa., John R. Strawmire, Altoona, Pa., for plaintiffs.

James R. Orr, Pittsburgh, Pa., Benjamin C. Jones, Tyrone, Pa., for defendants.

WEBER, District Judge.

This action is based on a complaint of denial of equal protection of the law under the 14th Amendment of the Consti-

tution of the United States. Jurisdiction of the United States District Court is founded on the provisions of 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 1343 (3). Baker v. Carr, 369 U.S. 186, 82 S. Ct. 691, 7 L.Ed.2d 663 (1962).

■ There is no question raised here of the application of the provisions of 28 U.S.C. § 2281, requiring a three judge district court, because there is no claim here that the Pennsylvania statute, under which defendants purport to act, offends the Equal Protection Clause of the 14th Amendment. See Ellis v. Mayor and City Council of Baltimore, 234 F. Supp. 945 (D.C.Md.1964); Simon v. Lafayette Parish Police Jury, 226 F. Supp. 301 (W.D.La.1964). In fact the Pennsylvania statute has the requirement of the equal protection clause as to equal voting rights incorporated in its very language.

■ A suggestion of the defendants in the later stages of this proceeding that the Attorney General of the Commonwealth of Pennsylvania was a necessary party to the action resulted in both parties submitting notice and copies of pleadings and briefs to that officer and he declined their invitation to intervene. We hold that he is not a necessary party to this Federal action.

The Pennsylvania "New School Reorganization Act" of 1963, Aug. 8, P.L. 564, Act No. 299; 24 P.S. § 3–303 provided for the creation of new school districts by the consolidation of former ones. It provided that in school districts of the 2nd, 3rd and 4th class there should be a school board of nine members, elected at large in the new district, except as otherwise provided in the Act.

The exception is contained in Art. III, § 4(b), 24 P.S. § 3–303(b) which provides that the interim operating committee of a new school district may, if it so chooses, develop a plan to divide the school district into three or nine regions.

"The boundaries of the regions shall be fixed and established in such manner that the population of each region shall be as nearly equal as

possible and shall be compatible with the boundaries of election districts."

Where a three region plan is adopted, three directors are to be elected from each region. Where a nine region plan is chosen, one director is to be elected from each region.

There is no language in this section that any other factors, such as topography or geography, prior local districts, or other such matters than pure population and existing election districts shall be considered. Other sections of the Act, Art. I, § 3 (24 P.S. § 2–290 et seq.), provide for consideration of factors of topography, pupil population, community characteristics and the like. These apply solely to the composition and boundaries of the new school district to be formed, and have no application to the elective representation within the district. An administrative procedure in the State Board of Education is provided to examine and pass on these factors.

The plan of elective representation selected by the within Defendant Interim School Board provided for nine regions, each to elect one representative as school director. The regions and their populations are as follows:

| REGION | AREA INCLUDED | POPU-LATION |
| --- | --- | --- |
| I | First and Second Wards, Borough of Tyrone, Blair County | 2257 |
| II | Third, Fourth and Fifth Wards, Borough of Tyrone, Blair County | 2876 |
| III | Sixth and Seventh Wards, Borough of Tyrone, Blair County | 2467 |
| IV | First District, Township of Snyder, Blair County | 1720 |
| V | Second District, Township of Snyder, Blair County | 1784 |
| VI | Township of Tyrone, Clair County | 659 |
| VII | Township of Taylor, Centre County | 508 |
| VIII | Township of Warriors Mark and Borough of Birmingham, Huntingdon County | 1169 |
| IX | Township of Franklin, Huntingdon County | 410 |

Thus the one representative from Franklin Township, having 410 population, represents seven times the voting power of the representative from the Third, Fourth and Fifth Wards of the Borough of Tyrone. The other disparities are self-evident.

The Pennsylvania statute provides that any such regional representation plan shall be submitted to the Court of Quarter Sessions of the County involved (or to the Court of Quarter Sessions of the County containing the largest portion of land involved in multi-county districts, as here) for approval. This was done here and the approval secured. We have no opinion of that Court before us to inform us of the questions considered, but it appears from an offer of defendants and an agreement by plaintiffs to stipulate to any such facts, that the evidence presented to that Court was based on the criteria of geography, topography and the like, such as are mentioned by the Act in connection with the creation of new school districts, but which are factors unrelated to the complaint of denial of constitutional rights raised here.

Plaintiffs applied to this District Court for relief, but the Court abstained on the grounds that no appeal had been taken to the highest appellate court of the state from the determination of the Court of Quarter Sessions and on the further ground that the Pennsylvania legislature

was considering the whole problem of legislative apportionment and should be allowed to work out the solution.

No appeal from the determination of the Court of Quarter Sessions being provided in the Act, the within plaintiff Delozier filed a Petition in the Pennsylvania Supreme Court for Special Allowance of Supersedeas and for Allowance of Appeal in the Nature of Certiorari. This petition was denied without hearing or opinion and the plaintiffs returned to this Court.

Defendants claim that plaintiffs Shope and Hoover did not join in this petition and are thus barred from returning to this Court. We find it unnecessary to pass on this objection, since we find that plaintiff Delozier is properly before this Court in a representative capacity.

■ Nor do we find plaintiff Delozier barred by the doctrine of England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed. 2d 440 (1964) that he freely and without reservation submitted his Federal claim to the state courts, litigated them there, and has had them decided there, and is thus barred from returning to the United States District Court, but should rather appeal his United States constitutional claim to the United States Supreme Court, by petition for certiorari from the State Supreme Court. We believe that this is an untenable argument since it does not appear either that Delozier has litigated his constitutional rights in the state courts, nor that he has had them decided there. In the absence of any opinion from any of the state courts here, how can we know what was decided? And certainly, it cannot be stated that his constitutional rights were litigated or decided by the Pennsylvania Supreme Court, which refused to hear the petition for appeal.

■ Any person, whose right to vote is impaired, has standing to sue. Gray v. Sanders, 372 U.S. 368 at p. 375, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963).

■ To come to the merits of this issue, Defendants, while they admit the jurisdiction of this court over the subject matter, argue that this is not a justiciable issue for lack of a substantial Federal question, relying on Tedesco v. Board of Supervisors of Elections, 339 U.S. 940, 70 S.Ct. 797, 94 L.Ed. 1357 (1950). That case involved the apportionment of seats on a City Council according to wards, which were unequal in population. The case was not brought under the Equal Protection Clause. The Supreme Court in a per curiam decision dismissed the appeal from the Louisiana state court "for want of a substantial federal question."

We doubt that Tedesco was ever intended to mean that the Equal Protection Clause did not extend to the rights of voters in municipal elections or that no relief for the deprivation of the constitutional right to equal representation was available in the Federal Courts. Justice Brennan, speaking for the majority in Baker v. Carr, 369 U.S. 186, at p. 234, 82 S.Ct. 691, at p. 719, 7 L.Ed.2d 663 (1962), said of it:

"Indeed, the refusal to award relief in Colegrove (Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432) resulted only from the controlling view of a want of equity. Nor is anything contrary to be found in those per curiams that came after Colegrove.

\* \* \* \* \* \*

(369 U.S. p. 235, 82 S.Ct. p. 720) Tedesco v. Board of Supervisors, 339 U. S. 940 [70 S.Ct. 797], indicates solely that no substantial federal question was raised by a state court's refusal to upset the districting of city council seats, especially as it was urged that there was a rational justification for the challenged districting. See [La.App.] 43 So.2d 514.

\* \* \* \* \* \*

(369 U.S. p. 236, 82 S.Ct. p. 720). Lastly, Colegrove v. Barrett, 330 U. S. 804 [67 S.Ct. 973, 91 L.Ed. 1262]

\* \* \* is sufficiently explained \* \* \* 'The discretionary exercise or nonexercise of equitable or declaratory judgment jurisdiction \* \* \* in one case is not precedent in another case where the facts differ.' (Cook v. Fortson, 329 U.S. 675, 678, n. 8, 67 S.Ct. 21, 22, 91 L.Ed. 596)"

Justice Douglas, concurring in Baker v. Carr, supra, said of these cases:

(369 U.S. p. 249, 82 S.Ct. p. 727) "With the exceptions of Colegrove v. Green, 328 U.S. 549 [66 S.Ct. 1198, 90 L.Ed. 1432]; MacDougall v. Green, 335 U.S. 281 [69 S.Ct. 1, 93 L.Ed. 3]; South v. Peters, 339 U.S. 276 [70 S.Ct. 641, 94 L.Ed. 834], and the decisions they spawned, the Court has never thought that protection of voting rights was beyond judicial cognizance. Today's treatment of those cases removes the only impediment to judicial cognizance of the claims stated in the present complaint."

And Justice Clark, also concurring in Baker v. Carr, supra:—

(369 U.S. p. 252 f. n. 2, 82 S.Ct. p. 729) "Similarly, the Equal Protection Clause was not invoked in Tedesco v. Board of Supervisors, 339 U.S. 940 [70 S.Ct. 797] (1950)."

Defendants have seized upon the reference by Justice Brennan to a rational basis for the challenged redistricting in Tedesco. But it has been shown in this case that many rational plans are available, based on various political, geographical and population district bases, that are just as rational as the one selected which do far less violence to the principle of equal representation. The rationale of the present plan is based largely on the former school districts which have been abolished by the act of the Pennsylvania legislature in the composition of the new school district. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) says of such plan:

(p. 581, 84 S.Ct. p. 1392) \* \* \* "But if, even as a result of a clearly rational state policy of according some legislative representation to political subdivisions, population is submerged as the controlling consideration in the apportionment of seats in the particular legislative body, then the right of all of the State's citizens to cast an effective and adequately weighed vote would be unconstitutionally impaired."
and

(p. 567, 84 S.Ct. p. 1384) \* \* \* "Population is, of necessity, the starting point for consideration and the controlling criterion for judgment in legislative apportionment controversies. A citizen, a qualified voter, is no more nor no less so because he lives in the city or on the farm. This is the clear and strong command of our Constitution's Equal Protection Clause." \* \* \*

Defendants have contended that the application of these principles have been limited by the Supreme Court to statewide elections for the state's legislative body. But in striking down the Georgia County-unit plan of voting in a party primary election the Court said:

" \* \* \* Once the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote—whatever their race, whatever their sex, whatever their occupation, whatever their income, and wherever their home may be in that geographical unit. This is required by the Equal Protection Clause of the Fourteenth Amendment." Gray v. Sanders, 372 U.S. 368 at p. 379, 83 S.Ct. 801 at p. 808.

■ Nor do we believe that the status of a local school district, being an arm or agency of the state legislature to administer its educational system makes it immune from the constitutional requirement. Admittedly the state legislature

could administer its school system other than by local elective boards. It does so in first class school districts in this state. (See Wilson v. Philadelphia School District, 328 Pa. 225, 195 A. 90, 113 A.L.R. 1401). But in the Little Rock School case (Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 1958) the Court held:

(p. 17, 78 S.Ct. p. 1409) " 'The constitutional provision, therefore, must mean that no agency of the State, or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a State government, * * * denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State. This must be so, or the constitutional prohibition has no meaning.' Ex parte Virginia, 100 U.S. 339, 347 [25 L.Ed. 676]. Thus the prohibitions of the Fourteenth Amendment extend to all action of the State denying equal protection of the laws; whatever the agency of the State taking the action, * * * or whatever the guise in which it is taken * * *." (citation omitted).

The legislature of the State of Pennsylvania has delegated the management of its educational system in local areas to local school boards. These boards, in the class of school district in the present case, and in most other classes, are elected by popular vote. The state has also delegated to such boards the power to levy taxes, and in most local communities the various taxes levied by the school boards are the largest local tax imposition. While school boards are subject to numerous limitations in the exercise of local powers, these limitations are no less in scope or variety than the limitations imposed on other governmental subdivisions or municipal corporations. The encroachment of state control and the extent and variety of state financial aid extends to all forms of political subdivisions in the state as well as to school boards.

In Lynch v. Torquato, 343 F.2d 370 (3rd Cir., 1965), where the Court of Appeals for the Third Circuit found this principle not applicable to a political party's local committee organization, the court, in citing Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801 (the Georgia County unit case), states:

(p. 371) "For present purposes we may assume that the same principle would control a precinct unit scheme of voting to choose party nominees for county-wide executive and legislative office. This would mean that the method of choosing nominees for such governmental offices as county commissioner and county representative in the state legislature would have to satisfy the same Fourteenth Amendment requirements as does the choice of nominees for Governor or United States Senator. State ex rel. Sonneborn v. Sylvester, 1965, 26 Wis. 2d 43, 132 N.W.2d 249; see also Bianchi v. Griffing, E.D.N.Y.1963, 217 F.Supp. 166."

(p. 372) "But the citizen's constitutional right to equality as an elector, as declared in the relevant Supreme Court decisions, applies to the choice of those who shall be his elected representatives in the conduct of government * * *."

This principle has been applied to various elective bodies, local, municipal, county and school districts, where that body is elective and exercises legislative powers. To the argument that the Supreme Court has not specifically and expressly so stated, the Supreme Court of Wisconsin has replied that there is no need for the United States Supreme Court to decide this expressly, since the Supreme Court of Wisconsin must also interpret the constitution. State ex rel. Sonne-

born v. Sylvester, 26 Wis.2d 43, 132 N.
W.2d 249 at p. 256.

We note the agreement of the following courts:

State ex rel. Sonneborn v. Sylvester, supra
(a county board)

Ellis v. City Council of Baltimore, 234 F.Supp. 945
(a city council)        (D.C.Md.1964)

Brouwer v. Bronkema (Case No. 1855) Circ.Ct.Kent Co.
(a county board)        Mich. (1964)

Bianchi v. Griffing, 217 F.Supp. 166, 238 F.Supp. 997
(a township board)      (E.D.N.Y. 1963–1965)

Damon v. Lauderdale County Election Commissioners
(a county board)        (Civil Action 1197–E) U.S.
                        D.C. S.D. Miss.1964

———◆———

These cases exclude those in which the equal representation sought was that guaranteed by state constitutional or statutory provisions, Griffin v. Board of Supervisors, 60 Cal.2d 318, 33 Cal. Rptr. 101, 384 P.2d 421 (1964), or where injunctive relief was denied because there was an available statutory procedure for redistricting, (Glass v. Hancock County Election Commission, 156 So.2d 825 (Miss.1963, appeal dismissed 378 U.S. 558, 84 S.Ct. 1910, 12 L.Ed.2d 1035 (1964)).

Only Johnson v. Genesee County, Michigan, 232 F.Supp. 567 (E.D.Mich. 1964) holds to the contrary, and that reluctantly with the expression that the Court felt ruled by Tedesco, supra, until that case was expressly overruled.

The decision of Griffing v. Bianchi, supra, being a three judge district court, was appealed by the county board to the United States Supreme Court. On motion of the original plaintiffs to dismiss for want of jurisdiction, the appeal was dismissed, Docket No. 206 October Term, 1965, October 11, 1965, thus leaving in the District Court the jurisdiction which it had retained pending legislative correction of the unequal representation.

■ We will, therefore, hold that the plan of representation adopted by the Interim School Board violates the man-

date of Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. It is not for this Court to indicate the type of representation that the people of this school district should have. This may be determined by the body having authority to choose under the Pennsylvania statute. There is no obstacle to the choice of either a plan of representation at large or of a regional plan of three or nine regions that meets the constitutional requirement.

■ We have withheld disposition of this matter for some time in the hope that it might be resolved by the parties, or by further state action. Since no state proceedings are presently under way, either by legislative enactment or otherwise, we are now ready to issue our decision in the matter. As we refrained in the first instance from enjoining the primary election, we will also refrain from interfering with the election scheduled for November 2, 1965 to fill the posts. We will, however, hold that none of the directors elected at that election shall continue to hold office from and after the first Monday of December, 1966, the statutory date of organization of school boards.

The Court will retain jurisdiction of the matter pending action for the adoption of a suitable plan. If no new plan

is submitted to and approved by the Court of Quarter Sessions by January 15, 1966, the Court will entertain further application for relief. This opinion constitutes the findings of fact and conclusions of law of the Court.

## ORDER

And now, this 29th day of October, 1965, the plan of representation of elected school directors is hereby declared to be in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and thereby void. No school director elected under such plan shall retain office after the first Monday of December, 1966. The Court retains jurisdiction of the matter for further proceedings as set forth in the accompanying opinion.