George J. MONTANO, Anthony D. Cerrone, Howard Moore, Ida Cirillo, Joseph V. Amatruda, Morton J. Dimenstein, Appellants,

v.

Richard C. LEE, Joseph A. Gianelli, Board of Aldermen of the City of New Haven, Appellees.

No. 146, Docket 31631.

United States Court of Appeals Second Circuit.

Argued Sept. 28, 1967.

Decided Oct. 5, 1967.

Robert I. Berdon, New Haven, Conn. (David D. Berdon, New Haven, Conn., on the brief), for appellants.

Thomas F. Keyes, Jr., New Haven, Conn., for appellees.

Before LUMBARD, Chief Judge, SMITH and KAUFMAN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

The appellants, residents and qualified voters of New Haven, brought this action in the United States District Court for the District of Connecticut, alleging that the New Haven Board of Aldermen was malapportioned and therefore violative of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States under Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

On March 24, 1966, pursuant to appellants' motion for summary judgment, the court held the then current districting plan for the New Haven Board of Aldermen, last amended in 1939, violative of the equal protection clause. It ordered this malapportionment corrected by the next municipal election, November 7, 1967. A charter revision committee, created under the Conn.Home Rule Act, Conn.Gen.Stat. 7–187 et seq., reported a proposed revision, which was rejected by the Board of Aldermen. On March 17, 1967 a redistricting plan was enacted by the Connecticut legislature and signed by the governor. That plan was based upon the districting plan of the Connecticut General Assembly. Each assembly district was divided into three wards; each ward was to elect one alderman. The assembly districts had been approved by a three-judge federal court in Butterworth v. Dempsey, 234 F.Supp. 302, 313 (D.Conn.1965), following the decision in the same case, 229 F.Supp. 754 (1964). The court, however, held that the unequal division of each of the New Haven assembly districts into three wards so magnified the population differences between the various assembly districts as to make the plan violative of the equal protection clause. On June 8, 1967 it declared the new plan void. It enjoined the holding of any further election for the Board of Aldermen unless it was elected on an at-large basis or under a redistricting plan to be adopted under the Conn.Home Rule Act, Conn.Gen.Stat. 7–187 et seq., that was constitutionally acceptable. The court retained jurisdiction.

On July 26 the district court entered an order clarifying its original order of June 8. It held that the Connecticut minority representation statute, Conn. Gen.Stat. 9–167a,[1] was inapplicable to

1. The statute insures a minimum of minority representation on any body whether elected or appointed by setting a maximum proportion of members of that body who may belong to the same party. An exception is made where the members of the body are elected from territorial districts.

the election it had ordered. It denied the appellants' motion for the appointment of a special master. On August 10, the court ordered the at-large election of the Board of Aldermen be held on November 7, 1967. Plaintiffs appeal from these orders of June 8, July 26 and August 10.

Appellants filed their notice of appeal on August 10. This ordinarily would not be timely with respect to a judgment entered on June 8, since Federal Rule 73(a) requires the notice of appeal to be filed within thirty days in an action where the United States Government is not a party. However, since the district court retained jurisdiction in its order of June 8, it had the power to modify its judgment at any time, and it did so modify it in the orders of July 26 and August 10. The notice of appeal was timely with respect to the orders of July 26 and August 10. This court has jurisdiction, therefore, to review those orders and the judgment they modify, i. e., the order of June 8.[2] The motion to dismiss the appeal is not well taken, and is denied.

The Supreme Court has recently held that the question of the extension of its reapportionment holdings to political subdivisions of the states is an open one. Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967). We think it plain, however, that the rationale of Reynolds v. Sims and the cases which have followed is generally applicable to elective legislative bodies of political subdivisions of the states. Ellis v. Mayor and City Council of Baltimore, 234 F. Supp. 945 (D.Md.1964), aff'd 352 F.2d 323 (4th Cir. 1965); Delozier v. Tyrone Area School Board, 247 F.Supp. 30 (W.D. Pa.1965); Seaman v. Fedourich, 16 N.Y.2d 94, 209 N.E.2d 778, 262 N.Y.S.2d 444 (1965). Cf. Bianchi v. Griffing, 256 F.Supp. 617 (E.D.N.Y.1966) and Moody v. Flowers, 256 F.Supp. 195 (M.D.Ala. 1966), both vacated 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed. 2d 643 (1967) (improperly before a three-judge court).

Appellants do not challenge the district court's finding that the pre-existing and newly adopted apportionment plans were invalid. Rather, they challenge the appropriateness of the remedy: an at-large election. They argue that an at-large election in a politically unbalanced community like New Haven[3] will result in a one party Board of Aldermen. The enjoining of an election under a malapportioned districting plan and ordering an at-large election is constitutionally permissible. Wesberry v. Sanders, 376 U.S. 1, 8, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); Butterworth v. Dempsey, supra. It is clear, however, that at-large elections have practical disadvantages that should be carefully weighed before a court orders one. See Lucas v. Colorado General Assembly, 377 U.S. 713, 731 n. 21, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964).

The parties at argument seemed to agree that the most expedient short term course for the district court, when the Home Rule Act effort and the effort in the legislature at redistricting failed to produce an acceptable apportionment, would have been the ordering of an election in which each assembly district would have elected three at-large aldermen. Unfortunately, the pressures of time make this alternative unavailable at this late date. The parties have completed the nominating procedure based on at-large election of a 30 member board, pursuant to the order of the court. In this situation we agree with the district court that an at-large election on the regular election date, November 7, 1967, is

---

2. At least at this stage of the litigation, the question of appealability of the original order of June 8 is in any case academic, since we modify only the orders of July 26 and August 10 which are clearly properly before us on appeal.

3. The Democratic Party received approximately two-thirds of the votes cast in

the last election of the New Haven Board of Aldermen. In addition, Democrats represent nearly four-fifths of the registered voters in New Haven. Presently, all the aldermen from the 33 wards under the old apportionment in New Haven are Democrats.

the best presently available method of assuring the election of a Board of Aldermen in which the rights of the voters of New Haven to equal protection of the laws will not be denied because of discrimination against the voters in some geographical areas by malapportionment.

■ However, the ruling on the question of the applicability of the Connecticut Minority Representation Statute to such an at-large election in the court's orders of July 26 and August 10 seems to us premature. The applicability of the minority representation statute to legislative rather than administrative bodies has apparently never been dealt with by the Connecticut courts.[4] Since the statute does not concern itself with the manner in which the election is to be conducted, but rather concerns itself with the method by which votes are to be counted in determining the winners in an election, there is no necessity for a federal court to determine its applicability at this time, even though it would of course be helpful if the question were resolved. "Viable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to meet changing urban conditions." Sailors v. Board of Education, 387 U.S. 105, 110, 87 S.Ct. 1549, 1553, 18 L.Ed.2d 650 (1967). There is room for the states in structuring their subordinate agencies, including the cities, to experiment with new methods and devices to insure that all points of view may be sure of a hearing, so long as there is no invidious discrimination against any individual or group's right to cast votes on an equal basis with all others. The constitutional limitations of such methods and devices have been little explored, and an essential starting point in such an exploration must be a determination of the legislative intent in adopting the plan, method or device. Determination of this intent is a particularly apt field for the courts of a state, steeped in the history and traditions of its political institutions. We feel therefore that determination of whether the minority representation statute is intended to apply to a local governing body with legislative powers such as the New Haven Board of Aldermen should be allowed to be presented by the parties, if at all possible, to the courts of the State.[5] This is not to say that the district court lacked jurisdiction to determine the question. Rather, that in light of the circumstances, it erred by prematurely exercising the jurisdiction that it admittedly had. Instead, it should have merely ordered the election to be held at-large, and should have abstained at this time from ruling on the question of applicability of the minority representation statute pending an interpretation by the state courts in a proper proceeding.[6] Of course, if the determination of the election officials is taken to the Connecticut courts for review and if the Connecticut courts, on a full record, determine that the statute is applicable to an at-large election of the New Haven Board of Aldermen, and that as so applicable it meets or does not meet federal constitutional requirements, and the parties then raise substantial question as to the constitutionality of the statute so interpreted, resort to the federal courts with respect to the question of the constitu-

4. See, however, Maisano v. Mitchell, Conn., 231 A.2d 539 (1967) (City Tax District); State ex rel. Bennett v. Glynn, 154 Conn. 237, 224 A.2d 711 (1966) (Board of Tax Review); State ex rel. Chapman v. Tinker, 25 Conn.Supp. 436, 207 A.2d 67 (Sup. Ct.1964) (Board of Finance).

5. Moreover, it is theoretically possible, although in an at-large election the parties consider it highly improbable, that of the 30 nominees receiving the highest number of votes, no more than 20 will be of the same political party.

6. Leiter Minerals, Inc. v. United States, 352 U.S. 220, 229, 77 S.Ct. 287, 1 L.Ed. 2d 267 (1957); Spector Motor Service v. McLaughlin, 323 U.S. 101, 105–106, (1944); Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 483–484, 60 S.Ct. 628, 84 L.Ed. 876 (1940); Forty-Fourth General Assembly of Colorado v. Lucas, 379 U.S. 693, 85 S.Ct. 715, 13 L.Ed.2d 699 (1965).

tionality of the application of the statute is not foreclosed by this decision.

The appellants' motion to stay the district court's order is denied. The appellees' motion to dismiss the appeal as untimely is also denied. The orders of the district court are modified as indicated herein, and as modified are affirmed.

This action has been pending in the district court since January of 1966. That court should retain jurisdiction in order to insure that the efforts to obtain a fair redistricting, by appropriate legislation, either local or state, be continued to a successful conclusion, without undue delay. In the event that the parties fail in those efforts, the court should consider appointing a special master, or taking other such suitable measures.

