JEROME SILVERMAN, ADMINISTRATOR (ESTATE OF
HAROLD NATHAN) *v.* ST. JOSEPH'S HOSPITAL ET AL.

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued December 4, 1974—decision released March 18, 1975

*Marshall S. Feingold,* for the appellant (plaintiff).

*Gregory C. Willis,* for the appellee (named defendant).

*Dion W. Moore,* for the appellee (defendant Louis D. Browning).

*Adrian W. Maher,* for the appellee (defendant James E. Crane).

*Frederick U. Conard, Jr., Ira H. Goldman,* and *John T. Mulrain,* filed a brief as amici curiae on behalf of the Connecticut Bar Association.

HOUSE, C. J. This appeal arose out of proceedings in a malpractice action brought against the named defendant and two physicians and returned to the Superior Court in Fairfield County on the first Tuesday of August, 1968. The record discloses that the named plaintiff, Jerome Silverman, the administrator of the estate of Harold Nathan, resigned as administrator in April, 1972, during the pendency

of the action, and that Nathan's widow, Adele Nathan, succeeded Silverman as administratrix and in that capacity was substituted as successor plaintiff. Since, however, the record and briefs have all continued to retain the original title of the case, we will conform to that usage.

A preliminary and necessarily lengthy recital of the facts surrounding and giving rise to this belated appeal is essential to place in context the limited issue involved. In October, 1968, the plaintiff applied to the Superior Court for permission to allow Alfred S. Julien, a member of the New York bar and not a member of the bar of this state, to take pretrial depositions of the defendants in preparation for the trial of the malpractice case. Over the objection of the defendants, the court (*Bogdanski, J.*) granted the application. Subsequently, in May, 1969, in an action brought by the defendants herein as plaintiffs, the court (*Tierney, J.*) granted an order permanently enjoining Julien from participating in the taking of the depositions. In November, 1970, the plaintiff applied to the Superior Court for permission to allow Julien to try the case. This application was denied by the court (*LaMacchia, J.*). In March, 1971, the then administrator and Mrs. Nathan commenced an action in the United States District Court for the district of Connecticut seeking a permanent injunction restraining Judge LaMacchia and the other judges of the Superior Court in Fairfield County from continuing a policy or practice which prevented them from engaging the services of Julien as their trial counsel in the state court action. By way of affirmative relief, they also sought an order directing the Superior Court judges to permit Julien to try the cases pro hac vice on behalf of the plaintiff in association with Con-

necticut counsel and staying proceedings in the Superior Court until Julien received such permission. The defendants moved that the action in the federal court be dismissed. In April, 1971, the District Court (*Clarie, J.*) denied the defendants' motion to dismiss and found that the plaintiffs had been denied equal protection of the laws but deemed it proper to abstain from intervening and providing a remedy until such time as the state reviewed the matter and had "the opportunity to consider and establish an objective rule or benchmark in the Practice Act [sic] which would clearly set forth the rights of attorneys from other jurisdictions to practice *pro hac vice* in Connecticut's Courts." See *Silverman* v. *Browning*, 359 F. Sup. 173, 175 (D. Conn.).

On June 21, 1971, the judges of the Superior Court adopted § 15A of the Practice Book entitled "Attorneys of Other Jurisdictions Appearing Pro Hac Vice."[1] On April 13, 1972, the plaintiff, proceeding under the provisions of Practice Book § 15A, moved for Julien's pro hac vice admission to try the case. It is the court's decision on this motion which is the subject of the present appeal.

---

[1] "[Practice Book] Sec. 15A. —ATTORNEYS OF OTHER JURISDICTIONS APPEARING PRO HAC VICE An attorney who is in good standing at the bar of another state, the District of Columbia, or the commonwealth of Puerto Rico, may, upon special and infrequent occasion and for good cause shown upon written application presented by a member of the bar of this state, be permitted in the discretion of the court to participate to such extent as the court may prescribe in the presentation of a cause or appeal in any court of this state; provided, however, that a member of the bar of this state must be present at all proceedings and must sign all pleadings, briefs and other papers filed with the court and assume full responsibility for them and for the conduct of the cause and of the attorney to whom such privilege is accorded. Where feasible, the application shall be made to the judge before whom such cause is likely to be tried.

Prior to the hearing of the plaintiff's motion in the Superior Court, the defendants in the federal court action again moved in that court to dismiss that action, claiming that the promulgation of § 15A of the Practice Book rendered it moot. That court (*Clarie, J.*), on April 19, 1972, denied the motion to dismiss, directed the federal court plaintiffs to proceed with all reasonable speed with the plaintiff administrator's pending motion in the Superior Court for the admission of Julien, directed that the federal court's order staying the action in the Superior Court remain in effect and ordered: "This court will retain jurisdiction in this suit pending the outcome of the application in the State Court for leave to the plaintiffs [sic] to have Alfred S. Julien appear as trial counsel *pro hac vice* in their [sic] action" and "[t]his matter may be brought on before this Court for further proceedings on the application of any party on notice to the others." On May 5, 1972, the Superior Court (*Tierney, J.*) denied the plaintiff's application for the admission of Julien under the pro hac vice rule, § 15A—the decision with which we are concerned on the present appeal.

Again the plaintiffs in the federal court action moved in that court seeking a final order granting the relief requested in their complaint—an injunction restraining the judges of the Superior Court

Good cause for according such privilege shall be limited to facts or circumstances affecting the personal or financial welfare of the client and not the attorney. Such facts may include a showing that by reason of a long-standing attorney-client relationship predating the cause of action or subject matter of the litigation at bar, the attorney has acquired a specialized skill or knowledge with respect to the client's affairs important to the trial of the cause, or that the litigant is unable to secure the services of Connecticut counsel."

from continuing a policy or practice which prevented them from having Julien as trial counsel in the Superior Court, an affirmative injunction directing the judges of the Superior Court to permit Julien to try the case, and an order staying the Superior Court action until Julien was admitted. They predicated their claims on the ground that § 15A of the Practice Book, on its face and as applied, was unconstitutional. They contended that the section contravened the due process and equal protection clauses of the federal constitution as well as the first and sixth amendments. *Silverman* v. *Browning,* supra.

In December, 1972, a three-judge District Court decided the case, filing three separate opinions. *Silverman* v. *Browning,* supra. Judge Clarie in his opinion expressed the view that in denying the application filed pursuant to § 15A of the Practice Book the Superior Court misread the rule, in part, and ignored other pertinent provisions in certain respects. For these reasons and in the interests of federal-state comity, he was of the opinion that the Superior Court's decision should be reviewed by this court. *Silverman* v. *Browning,* supra, 175–77. Judge Smith was of the opinion that the action in the federal court should be dismissed for want of a substantial federal question. *Silverman* v. *Browning,* supra, 180. Judge Newman was of the opinion that § 15A of the Practice Book contravened the equal protection clause of the federal constitution and was clearly unconstitutional. *Silverman* v. *Browning,* supra, 177–80. In view of the fact, however, that one of his colleagues favored abstention and the other dismissal, he concluded (p. 180) : "In these circumstances, and solely to assemble a majority disposition, I concur in the result reached by

Judge Clarie to abstain to afford the Connecticut Supreme Court an opportunity for further consideration of plaintiffs' claim to employ counsel of their choice. While I do not believe such abstention is warranted in view of our obligation to decide constitutional questions properly brought before us, I fully share Judge Clarie's view that it would be desirable for the state courts to resolve this matter."

From this decision of the District Court, the plaintiffs in that court took a direct appeal to the United States Supreme Court which, on April 23, 1973, affirmed the decision of the District Court without oral argument or an opinion. *Silverman* v. *Browning,* 411 U.S. 941, 93 S. Ct. 1927, 36 L. Ed. 2d 406. Then on May 23, 1973, the plaintiff filed the present appeal to this court, claiming error in the May, 1972, judgment of the Superior Court denying the motion to admit Julien pro hac vice to argue this case on the trial.

As this recital of the background of this appeal indicates, the relatively simple issue presented by an appeal from the May, 1972 judgment of the Superior Court has been unnecessarily delayed, clouded and complicated. While it is true as stated by Judge Clarie in his decision of April 29, 1971, that "[t]his suit presents the delicate question of the right of a qualified and licensed out-of-state attorney to practice law in the state courts of Connecticut in a particular case," adjudication of that question has been delayed and complicated by the successful efforts of the plaintiff to persuade the federal District Court to assume jurisdiction to intervene and issue orders with respect to the conduct of a trial in a trial court of this state in a

matter over which the state trial court had original jurisdiction and was exercising that jurisdiction and whose exercise of jurisdiction was, in case of error, subject to rectification by appeal to this court and from this court to the United States Supreme Court. Recognition of the fact that the state trial court had primary jurisdiction to decide the question of Julien's admission is implicit in the April 19, 1972, judgment of the District Court, which directed the plaintiffs to "proceed with all reasonable speed with an application in the Superior Court action entitled: Jerome Silverman, as Administrator, etc., v. Louis D. Browning, et al., for the admission of Alfred S. Julien as trial counsel *pro hac vice*." Explicit in the same judgment was the order of the District Court which continued its order to stay other proceedings in the state court and its implied assumed jurisdiction of appellate review of such judgment as should be rendered by the Superior Court by its orders that "[t]his court will retain jurisdiction in this suit pending the outcome of the application in the State Court for leave to the plaintiffs to have Alfred S. Julien appear as trial counsel *pro hac vice* in their action" and that "[t]his matter may be brought on before this Court for further proceedings on the application of any party on notice to the others."

To the same effect was the decision of the three-judge District Court rendered December 4, 1972, after the decision of the Superior Court denying the plaintiff's application. The District Court this time directed the plaintiffs to proceed with all reasonable diligence to obtain in this court appellate review of the Superior Court judgment denying Julien's admission under the pro hac vice rule, continued the stay of the state court action, and again asserted

that the three-judge District Court retained jurisdiction pending the final outcome of the appeal to this court. It further directed that the matter could be brought on before the District Court for further proceedings on the application of any party on notice. *Silverman* v. *Browning,* 359 F. Sup. 173, 177.

In many respects the situation is similar to that in *Spector Motor Services, Inc.* v. *Walsh,* 135 Conn. 37, 61 A.2d 89, and in *Hoblitzelle* v. *Frechette,* 156 Conn. 253, 240 A.2d 864. In the *Spector* case, this court (p. 70) indicated that "[t]he trial court should not have decided whether the Corporation Business Tax Act was in violation of the United States constitution, because that question, as we have stated, is still before the federal courts for decision." A further comment from that case also seems appropriate in the present circumstances (p. 42): "The plaintiff might have secured in the courts of this state the very relief which . . . [he] sought in the District Court; and we refrain from comment upon the long delay which must ensue before a final settlement of the controversy can be reached, due to . . . [his] invocation of the jurisdiction of the federal courts." In the *Hoblitzelle* case, the District Court ordered an election in New Haven and there was a question as to whether § 9-167a of the General Statutes concerning minority representation applied to such an election. The District Court decided that the statute was not applicable. The United States Circuit Court of Appeals held that this decision was "premature" and that the question of the applicability of the statute should be presented if at all possible to the courts of the state for decision. *Montano* v. *Lee,* 384 F.2d 172 (2d Cir.). The District Court, however, retained

jurisdiction pending a decision of the question by the state courts. The question was presented to this court on a reservation. This court noted, in *Hoblitzelle* v. *Frechette,* supra, 265: "It is the law of the case now pending in the District Court, as announced by the Court of Appeals, that the District Court has jurisdiction to decide the basic questions presented to us in the present case. It is the law of that case that any answer by us to the questions asked in the present action would be inconclusive on the District Court in the exercise of its retained jurisdiction." Noting the similarity to the situation in the *Spector* case and that the District Court had retained jurisdiction for ultimate decision, this court refused to answer the reserved question, indicating that were we to answer the question propounded it would be the duty of the trial judge to conform his decision accordingly, and "[s]uch a result, affecting the rights of persons whose election is still pending and undetermined within the jurisdiction of the District Court, is unthinkable and could only lead to confusion, conflict of jurisdiction, and further litigation." *Hoblitzelle* v. *Frechette,* supra, 267.

As if the assumption of jurisdiction by the District Court and its retention of jurisdiction pending a decision by the state courts, which it directed the plaintiffs to obtain, did not sufficiently confound the principal issue involved on this appeal, it is further confounded by the fact that the judgment from which the present appeal was taken was filed on May 5, 1972. If that judgment was a final judgment, then the time for filing the appeal was under the provisions of § 601 of the Practice Book limited to twenty days. If, on the other hand, the appeal is considered to be permissible under the provisions

of § 604 of the Practice Book as a judgment disposing of part of the issues, it was incumbent upon the plaintiff to file notice of the appeal within twenty days. A notice of appeal was not filed until May 23, 1973—almost exactly a year late.

Despite the existence of all of these complications, we have, not without considerable hesitation and reluctance, decided to entertain the present appeal. Our decision is prompted by several considerations. Unlike the situation in the *Spector* and *Hoblitzelle* cases where the federal court had and exercised original jurisdiction and the later proceedings in the state court were thereafter undertaken at the direction of the federal courts which retained jurisdiction, in the present case it was the state trial court which had and was exercising original jurisdiction subject on appeal to review by this court, and it is the federal court which then chose, nevertheless, to intervene and interfere with the continuing exercise of state court jurisdiction. Paraphrasing what we said in *Hoblitzelle* v. *Frechette,* supra, 265: "The clear import of the District Court judgment is to assert complete direction and control of all aspects of . . . [the proceedings for the admission pro hac vice of Julien]. The plaintiffs . . . chose to invoke the jurisdiction of the District Court, and that court assumed jurisdiction even though the state courts were equally open to entertain the case [and were doing so]. *Scott* v. *Germano,* 381 U.S. 407, 409, 85 S. Ct. 1525, 14 L. Ed. 2d 477. It is neither our province nor our wish, in this proceeding, to consider the assumption, the scope or the result of the exercise of that jurisdiction." In considering the merits of this appeal, we are merely exercising the undoubted appellate jurisdiction which this court has over the judgment

of a trial court in this state. As to the remaining problems in connection with entertaining the appeal, the defendants have interposed no objection to its consideration by us and, in fact, have urged that the appeal be decided and an end be put to the six-year delay since the action was started so that they may at last have their day in court for a trial on the merits. The latter plea impels us, other problems notwithstanding, to proceed, pursuant to the provisions of § 762 of the Practice Book as amended, and "to facilitate business and advance justice" by deciding the merits of the present appeal. Last in mention, although not last in importance, is our regard for the decision of the United States Supreme Court in *Silverman* v. *Browning,* 411 U.S. 941, 93 S. Ct. 1927, 36 L. Ed. 2d 406, affirming the order of the District Court that the plaintiffs proceed to obtain appellate review in this court of the denial of Julien's admission under the pro hac vice rule of § 15A of the Practice Book.

We turn now to a consideration of the merits of the plaintiff's appeal. In limine, it is important to note that the administrator is the sole party plaintiff in these proceedings. Julien was not a party to these proceedings in the Superior Court and is not a party to this appeal, and there is no indication that he has ever attempted to intervene or present any claim in our courts that he has been denied any right. We are concerned solely with the plaintiff's claim of a right to have his case tried by an attorney who has not been admitted to the Connecticut bar, and Julien has asserted no claim of his own. The rule of jus tertii is fully applicable. *Tileston* v. *Ullman,* 318 U.S. 44, 46, 63 S. Ct. 493, 87 L. Ed. 603; *Mendez* v. *Mendez,* 160 Conn. 237, 278 A.2d 795. A litigant may only assert his own constitutional

rights and immunities. *McGowan* v. *Maryland,* 366 U.S. 420, 429, 81 S. Ct. 1101, 6 L. Ed. 2d 393; *United States* v. *Raines,* 362 U.S. 17, 22, 80 S. Ct. 519, 4 L. Ed. 2d 524.

The plaintiff's application pursuant to the provisions of § 15A of the Practice Book was entitled "Motion for Permission to Allow Attorney Alfred Julien of the New York Bar to Try This Case on Behalf of the Plaintiff as Provided for Under Section 15a of the Connecticut Practice Book, as Amended." It alleged the pendency of the malpractice case, that it was a difficult case to try, that the plaintiff had retained Attorney Julien of the New York bar to handle the case, that Julien is one of the foremost medical malpractice trial attorneys in the United States and has tried numerous medical malpractice cases to successful conclusions, that he has had a great deal of experience, that the subject matter of the pending litigation is very technical in nature and difficult to prove and will require the services of an attorney who is familiar with the medical field, that the plaintiff retained Julien to handle this case because of his expertise, and that the outcome of the case will "affect the financial welfare of the estate of the decedent." The application also recited that during the course of the trial the plaintiff's Connecticut attorney would be present, would be responsible for all pleadings, briefs and other papers, and would assume full responsibility for the conduct of the trial and of Julien.

From the court's denial of the application, the plaintiff filed the appeal to this court and, in accordance with the provisions of § 613 of the Practice Book, filed his request for finding and draft finding.

Section 614 of the Practice Book[2] prescribes the form and contents of a draft finding under our practice. Essential requirements include "a statement, in consecutive, numbered paragraphs, of the relevant and material facts proven, the conclusions of the court, [and] the claims of law made in the trial court with the rulings of the court thereon."

Because of the importance which attaches to what a party has actually proved as distinguished from what he has pleaded in one court or another, it is pertinent to examine the draft finding submitted by the plaintiff as his "statement . . . of the relevant and material facts proven" in support of his application and his "claims of law made in the trial court with the rulings of the court thereon." For this reason, we have printed in a footnote the entire draft finding[3] submitted by the plaintiff as his statement of what he claims to have proven to the trial court in support of his application. It is obvious from his own claim of what he proved in the trial court that the plaintiff submitted no evidence whatsoever of "good cause" for the pro hac vice admission of Julien except that he had retained Julien to

[2] "[Practice Book] Sec. 614. FORM AND CONTENTS OF DRAFT FINDING  The draft finding shall contain, under separate headings, a statement, in consecutive, numbered paragraphs, of the relevant and material facts proven, the conclusions of the court, the claims of law made in the trial court with the rulings of the court thereon, and the ruling on evidence or other rulings on the trial which the appellant desires to have reviewed.  The draft shall be in substantial conformity with Form 603, statements of rulings on evidence shall comply with Sec. 648, and appropriate references to pages of the transcript shall be made as provided in Sec. 641."

[3] "FIRST:  The following facts are found:

"1. The above captioned case was returnable to this Court on the first Tuesday of August, 1968.

"2. This case is a medical malpractice death action.

"3. The Plaintiff, Jerome Silverman, Administrator of the Estate of Harold Nathan, retained attorney Alfred S. Julien of New York

handle the case. No claims of law made in the trial court by the plaintiff are printed for the reason that the draft finding contains none. Nor is there any indication elsewhere in the record that he ever made any.

The trial court filed a finding of facts with the conclusions it reached thereon. It referred to the pending malpractice case and found that the plaintiff had retained Attorney Julien of the New York bar to handle the case for him, that Julien had referred the case to Connecticut counsel for the purpose of instituting suit, that that counsel had brought suit, that the plaintiff had moved for permission to allow Julien to be admitted specially for the trial pursuant to § 15A of the Practice Book, and that the court had denied the motion after argument. It then found that the plaintiff made no showing that the application was "a special or infrequent occasion," that the only reason given by the plaintiff in open court on the hearing on the application was that the plaintiff "desired" Julien to represent him,

City, a member of the Bar of the State of New York, to handle this case, and to take whatever action necessary to protect the Plaintiff's rights.

"4. The only state where this action could be instituted was the State of Connecticut.

"5. Attorney Alfred S. Julien referred this case to Attorneys Feingold & Fernino of Hartford, Connecticut for the purposes of instituting suit.

"6. Attorneys Feingold & Fernino brought suit on this case in the Superior Court for Fairfield County at Stamford on behalf of the Plaintiff, Jerome Silverman, Administrator of the Estate of Harold Nathan.

"7. By motion dated April 13, 1972, the Plaintiff, Jerome Silverman, Administrator of the Estate of Harold Nathan, moved for permission to allow Attorney Alfred S. Julien, to be admitted specially for the trial of this case, pursuant to Rule 15A of the Connecticut Practice Act.

"8. The Plaintiff's motion was denied by the court on May 5, 1972, after argument."

that no factual showing was made by the plaintiff at the hearing that Julien's representation would affect the personal or financial welfare of his client, that no showing was made at the hearing that the litigant was unable to secure the services of competent Connecticut counsel to try the case, and that the plaintiff failed to establish good cause under § 15A of the Practice Book. On the basis of these facts, the court reached the following conclusions of law: The plaintiff did not establish any subordinate facts to support his application under § 15A of the Practice Book; the plaintiff presented no facts to warrant a conclusion that good cause under § 15A had been established; the mere fact that a client desires out-of-state counsel to represent him in the courts of this state is not sufficient reason, in and of itself, to warrant granting such permission; and " '[g]ood cause' includes" showing that a pro hac vice permission given to an out-of-state attorney be in the best interests of his client, either personal or financial, and no such showing was made. In addition to these conclusions of law, the court stated: "The questions of law raised by the plaintiff in paragraphs 3 through 8 were never presented to this court, nor raised in plaintiff's application for motion [sic]. No review of such claims is therefore made." The reference is to six paragraphs contained in the plaintiff's request for finding. They are all in the form of questions asking whether the court in denying the plaintiff's application did certain things: (3) deny the plaintiff his rights under the due process clause of the fourteenth amendment to the United States constitution; (4) deny Julien his rights under the same due process clause; (5) deny the plaintiff his rights under the equal protection clause of the fourteenth amend-

ment; (6) deny Julien his rights under the same equal protection clause; (7) deny the plaintiff his rights under the first amendment to the constitution as well as his rights under the privileges and immunities clause of the fourteenth amendment; (8) deny the plaintiff his rights under the sixth amendment to the United States constitution. It is significant to note again that Julien is not a party to these proceedings and that none of the questions which the plaintiff wanted "reviewed" on appeal was ever raised in the trial court for its consideration. It is also important to distinguish these "questions of law" contained in the plaintiff's request for a finding from "claims of law" presented on the trial of a case. Section 613 of the Practice Book provides that *after* a trial has been concluded an appellant shall submit his request for a finding which shall state "the questions of law which he desires reviewed" on the appeal. "Claims of law," on the other hand, are claims of law made *during* a trial and before argument if counsel intends to raise any question of law which may be the subject of an appeal to this court. Practice Book § 223.[4] Claims of law, to receive consideration in this court, must have been raised in the trial court. Practice Book §§ 223, 652; *State* v. *Dukes,* 157 Conn. 498, 501, 255 A.2d 614; *Bigionti* v. *Argraves,* 152 Conn. 700, 701, 204 A.2d 408; *Housing Authority* v. *Pezenik,* 137 Conn. 442, 448, 78 A.2d 546. A party cannot present

---

[4] "[Practice Book] Sec. 223. RAISING QUESTIONS OF LAW In trials to the court, if counsel intends to raise any question of law which may be the subject of an appeal to the supreme court, he must state the same distinctly to the court before his argument is closed, and in such time as to give the opposing counsel an opportunity to discuss the question, and must request the court to take note of the point. If this be omitted, it will not be the duty of the court to decide the question. Counsel shall present the questions of law in writing, unless the exigencies of the case render this impracticable."

a case to the trial court on one theory and then ask a reversal in this court on another. *Arcari* v. *Dellaripa,* 164 Conn. 532, 537, 325 A.2d 280; Maltbie, Conn. App. Proc. § 305. As we have noted, the plaintiff filed no claims of law in the trial court, constitutional or otherwise, and admits in his brief on appeal that the due process and equal protection clause issues he has raised for the first time on appeal were "unarticulated premises of plaintiff's motion for Mr. Julien's admission under the pro hac vice rule." An "unarticulated" claim of law hardly complies with the requirement of § 223 of the Practice Book that any question of law which may be the subject of an appeal must be stated "distinctly" to the trial court.

The conclusions are inescapable both that no evidence whatsoever was submitted to the trial court to show "good cause" why the application to admit Julien pro hac vice should be granted and that no claim of any violation of any constitutional right of the plaintiff was ever submitted to that court. Under these circumstances, we find no error in the conclusions reached by the court and in its denial of the application.

While this decision on the merits of the appeal is conclusive of the matter before us and no further discussion is required, the crossruff aspects of the proceedings instituted by the plaintiffs in the federal court and the observations of that court in *Silverman* v. *Browning,* 359 F. Sup. 173, prompt us to further comment. Both Judge Clarie and Judge Newman in their opinions suggested that the Superior Court and counsel appearing before it had misread or misconstrued the provisions of § 15A of the Practice Book[5] to require as a condition precedent

---

[5] See footnote 1, supra.

to the granting of a pro hac vice application that there be a showing of a preexisting attorney-client relationship or that no Connecticut counsel was available to try the case. In all fairness, it is to be noted that these observations were made in opinions filed on December 4, 1972, when the finding of the Superior Court (filed September 5, 1973) was not yet available, and were apparently based on their interpretation of some colloquy between the court and counsel during argument. See *Lemelson* v. *Kellogg Co.,* 440 F.2d 986 (2d Cir.). The Superior Court filed its finding pursuant to the provisions of § 619 of the Practice Book which require that the court set forth "all facts which the court finds proven which are claimed to be relevant and material to the questions of law raised, and, under separate headings, the conclusions drawn by the court from the facts found." As we have hereinbefore noted, the court found, inter alia, that the plaintiff made no showing that the application, pursuant to § 15A, was a special or infrequent occasion so far as Julien was concerned, that the only reason given in support of the application was the "desire" of the plaintiff, and that the plaintiff failed to establish good cause under § 15A. Among the conclusions reached by the court were that the plaintiff presented no facts to warrant a conclusion that "good cause" under § 15A had been established; that the mere fact that a client desires out-of-state counsel is not sufficient reason, in and of itself, to warrant granting such permission; and, most significantly, that " '[g]ood cause' *includes* showing that a *pro hac vice* permission given to an out of state attorney be in the best interests of his client, either personal or financial. No such showing was made." (Emphasis supplied.)

On the basis of the conclusive finding of the Superior Court, we cannot find that it misread or misconstrued the requirements of § 15A. The rule clearly states that a showing of "good cause" is a condition precedent to the granting of an application and that "[g]ood cause for according such privilege shall be limited to facts or circumstances affecting the personal or financial welfare of the client and not the attorney." While the rule goes on to state that such facts "may include" the showing of a preexisting attorney-client relationship or the inability of the litigant to secure the services of Connecticut counsel, we do not construe the suggestion of these illustrations of relevant facts which permissibly "may" be shown as being exclusive criteria rather than examples of relevant circumstances affecting the personal or financial welfare of the client which may be proved. Nor do we conclude from the court's finding that it so misread or misconstrued the rule as to find that these were exclusive criteria rather than illustrative examples.

For all its ramifications, this case is essentially one where the trial court found that the plaintiff had not sustained his burden of proof, and we find that there was no error in that conclusion of the court.

There is no error.

In this opinion LOISELLE, MACDONALD, and LONGO, Js., concurred.

BOGDANSKI, J. (dissenting.) As properly noted in the majority opinion, "we are merely exercising the undoubted appellate jurisdiction which this court has over the judgment of a trial court in this state." That judgment is the denial by the Superior Court

on May 5, 1972, of an application made pursuant to Practice Book § 15A. That is the only court action before us.

An examination of the entire record discloses (1) that the parties and the court misunderstood the procedure for making a § 15A application for admission of an out-of-state attorney to participate in the trial of a case before a court of this state, and (2) that the trial court misconstrued the provisions of that rule.

Section 15A expressly provides that the application is to be made by "a member of the bar of this state." See footnote 1 of the majority opinion. In this case, the application was made by the plaintiff through his Connecticut attorney. While this defect is not a matter of any substance, it is important to emphasize that such an application is not one brought by the litigant, but rather it is one that is brought by a member of the bar of this state and an officer of the court. See *In re Application of Plantamura,* 149 Conn. 111, 113, 176 A.2d 61, cert. denied, 369 U.S. 872, 82 S. Ct. 1141, 8 L. Ed. 2d 275; *Heiberger* v. *Clark,* 148 Conn. 177, 186, 169 A.2d 652. As in an application for admission to the bar, there are no adversary parties in a technical legal sense when application is made for an out-of-state attorney to appear pro hac vice pursuant to § 15A. See *Heiberger* v. *Clark,* supra, 182. For those reasons it is not surprising that § 15A does not require an evidentiary hearing to establish the facts set forth in the application. The rule only calls "for good cause shown upon written application." Indeed, in this case the trial court did not take any evidence, and the parties "in opposition" did not dispute any of the facts set forth in the application.

The finding of facts, therefore, by the trial court was not warranted. "We have repeatedly stated that a trial court should not make a finding of facts where it hears no evidence. The reason is that such a finding would add nothing to the record; indeed it might well cloud the issue. *Biz* v. *Liquor Control Commission,* 133 Conn. 556, 557, 53 A.2d 655; *Dion* v. *Dion,* 128 Conn. 416, 417, 23 A.2d 314." *Winchester Repeating Arms Co.* v. *Radcliffe,* 134 Conn. 164, 169, 56 A.2d 1; see Practice Book § 609; Maltbie, Conn. App. Proc. § 126.[1]

The only "facts" properly before us are the undisputed representations in the written application. The conclusions of the trial court are therefore tested by those representations of fact.

The application in relevant part states that the outcome of the plaintiff's malpractice case will "affect the financial welfare" of the decedent's estate; that "the subject matter of the litigation at bar is very technical in nature and difficult to prove"; that "[A]ttorney . . . Julien . . . over the years has acquired a special skill or knowledge with respect to medical malpractice cases, which is important to the trial of the plaintiff's cause of action";[2] and that the "plaintiff retained . . . Julien to handle this case because of his expertise in the trial of medical malpractice cases."

[1] It is, of course, proper to set forth in a finding the conclusions of the court and claims of law of the parties which do not appear on the face of the record, but there can be no "facts found" when no evidence is taken.

[2] The application set forth Julien's qualifications as follows: "Mr. Julien was admitted to the bar of New York in 1933 and is 'a veteran malpractice attorney' (opinion of federal court injunction dated April 29, 1971, page 2). In addition, he has participated in a joint symposium held by the Hartford County Bar Association and Hartford County Medical Association, on May 11, 1970, at the

The trial court concluded that the "plaintiff has presented no facts to warrant a conclusion that good cause under Rule 15A has been established." That conclusion is erroneous for two reasons. First, the application is made not by the plaintiff, but by "a member of the bar of this state." No evidence was presented because the veracity of the statements in the application was undisputed. Second, the application arguably shows "good cause" under § 15A because "circumstances affecting the . . . financial welfare of the client" are set forth.

In ruling on the application the trial court stated: "The two principal bases on which he would be permitted here apparently are not present, are they? He [Julien] has no long-standing attorney-client relationship, and although he has a specialized skill, the litigant is certainly not unable to secure the services of Connecticut counsel who have the same skill." The two principal bases referred to by the trial court are examples given in § 15A of what "may" constitute "good cause." Those examples

---

Hartford Hilton Hotel, on a malpractice seminar, and he has lectured widely on the subject of malpractice to both bar associations and medical groups in New York, New Jersey, Michigan, Tennessee and California. He has tried malpractice cases in the state courts of New York, California, Wisconsin and New Jersey and the Federal District Court in Philadelphia, Pennsylvania, in each case by special permission of the court; he has written articles on the subject of medical malpractice and some of these articles have been published in medical and legal journals. He has conducted courses in medical malpractice for practicing attorneys in New York and New Jersey, and he has been President of the American Trial Lawyers Association, President of the New York State Trial Lawyers Association, and is currently President of the Metropolitan Trial Lawyers Association, and has been admitted to practice, in addition to the New York Bar, in the United States District Court for the Southern District, New York, the Eastern District, New York, the District of Columbia, the Eastern District, Maryland, the United States District Court, District of Connecticut, and the United States Circuit Court of Appeals for the Second Circuit."

are not exclusive, as the trial court apparently believed, but are merely illustrations of facts or circumstances affecting the personal or financial welfare of the client.[3]

I would therefore find error and remand the case with direction to reconsider the application.

---

[3] Ethical Consideration 3-9 of the Code of Professional Responsibility is relevant to the interpretation of Rule 15A:

"[T]he demands of business and the mobility of our society pose distinct problems in the regulation of the practice of law by the states. In furtherance of the public interest, the legal profession should discourage regulation that unreasonably imposes territorial limitations upon the right of a lawyer to handle the legal affairs of his client or upon the opportunity of a client to obtain the services of a lawyer of his choice in all matters including the presentation of a contested matter in a tribunal before which the lawyer is not permanently admitted to practice."

"The Canons and Disciplinary Rules contained in the Code of Professional Responsibility as adopted by the American Bar Association and as recommended by the House of Delegates of the Connecticut Bar Association for adoption were approved, and the Ethical Considerations of the Code as adopted by the American Bar Association were approved in principle, by the judges of the Superior Court effective Oct. 1, 1972. . . . " Conn. Practice Book, p. 1 n.