STATE OF CONNECTICUT *v.* RUDOLPH WRIGHT

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, JS.

Argued June 6—decision released July 29, 1975

*Herbert J. Bundock,* public defender, for the appellant (defendant).

*Donald A. Browne,* state's attorney, for the appellee (state).

HOUSE, C. J. The defendant, Rudolph Wright, was indicted by a grand jury September 20, 1971, for the crime of murder in the first degree in that on July 31, 1971, in Bridgeport, he did wilfully, deliberately, with premeditation and malice afore-thought shoot and kill Joseph Brodie, in violation of then § 53-9 of the General Statutes. The defendant pleaded not guilty and elected to be tried by a jury of twelve. The case was tried and the jury returned a verdict of guilty of murder in the second degree. The defendant was sentenced by the court to life imprisonment, and it is from this judgment that he has taken the present appeal.

The defendant has made a claim of error in the denial of his motion to set aside the verdict as being contrary to law and against the evidence. The appeal having been taken before the rules for taking appeals in jury cases were amended effective October 1, 1974, such a claim is tested by the evidence printed in the appendices to the briefs and such exhibits as are made a part of the record. *State* v. *Brown,* 161 Conn. 219, 220, 286 A.2d 304; *State* v. *Hassett,* 155 Conn. 225, 232, 230 A.2d 553; *State* v. *Stallings,* 154 Conn. 272, 283, 224 A.2d 718. If the verdict is one which twelve honest jurors acting fairly, intelligently and reasonably could have reached on the evidence submitted to them, then the verdict cannot be disturbed. *State* v. *Brown,* supra; *State* v. *Miller,* 154 Conn. 622, 624, 228 A.2d 136.

From the evidence the jury could have found the following facts: Arthur DeLally, a Bridgeport police officer, was on duty on July 31, 1971. At approximately 7:45 p.m. on that day, he was dispatched to a house on 159–161 Bunnell Street where he observed a body identified as that of Joseph Brodie lying on the stairs between the second and third floors. Mamie Potts resided in the third floor apartment at 159–161 Bunnell Street on July 31, 1971, and was the girlfriend of the defendant. On the early evening of that day, there were a number of people present in Mrs. Potts' apartment. These included Joseph Brodie, his sister Doris Lindsay, and two other men, Willie Green and Clarence Ferrell. Joseph Brodie was a former boyfriend of Mrs. Potts. At approximately 7 p.m., the defendant came into Mrs. Potts' apartment and walked into the kitchen where he asked Mrs. Potts if she was having a good time. When Mrs. Potts replied that she was having a good time, the defendant struck her in the face. After the defendant struck Mrs. Potts, he went to the living room where he walked up to Joseph Brodie and stated, "Joe out, out man, out," after which he pushed Brodie, jumped back, pulled out a pistol from his belt and shot Brodie. At the time that he was shot by the defendant, Brodie was standing in the living room, without anything in his hands. He had not said anything to the defendant. After Brodie was shot, he started to walk out of the apartment. The defendant pointed the pistol at him again at which time Mamie Potts grabbed his arm and the defendant discharged another bullet which went into a chair. While the defendant and Mamie Potts were struggling for the pistol, a third shot was discharged into the apartment hall. The defendant walked down the front

stairs and then returned to the apartment and told Mrs. Potts to give him some money which she did not do. Mrs. Potts walked out of her apartment and observed Joseph Brodie's body on the stairs. She then returned to her apartment and looked out the window and saw the defendant get into his automobile and drive away.

Harold E. Doherty, a licensed physician and medical examiner for the city of Bridgeport, observed the body of Joseph Brodie on the evening of July 31, 1971, on an interior stairway at 159–161 Bunnell Street, Bridgeport. Doherty observed that Brodie was dead and had sustained a gunshot wound in his left chest. Doherty attended an autopsy performed upon the body of Joseph Brodie during which a bullet was located in Brodie's spine. Doherty determined that Joseph Brodie died from exsanguination hemorrhage secondary to a gunshot wound of the chest. From the foregoing, which is only a portion of the evidence printed in the appendix to the state's brief, the jury were amply justified in finding the defendant guilty of murder in the second degree.

The defendant's sole remaining assignment of error is to the court's charge to the jury on the law of malice. At issue is not whether the substance of that portion of the charge was correct but rather whether the manner in which the instruction was given unduly prejudiced the defendant's right to a fair trial.

At the conclusion of the court's charge to the jury, the state took exception to the court's failure to charge that "the jury may justifiably imply malice from the use of a deadly weapon." After some reflection and relying on *State* v. *Guilfoyle,*

109 Conn. 124, 138, 145 A. 761, the court agreed that the "law presumes malice from the unlawful use of a deadly weapon such as a revolver or pistol." The jury were then recalled to receive a supplemental charge. The court then charged as follows: "Ladies and gentlemen of the jury, we have been checking over the exhibits and the papers in the case, and it has come to the court's attention that the State had claimed that the use of a revolver, or a pistol in itself could indicate malice. We do have a couple of cases in our Supreme Court Reports that indicate the same thing, that you may consider the use of a pistol, or a revolver, as bearing upon the question of malice because the use of a deadly weapon is a factor that is to be weighed on that question and that you may presume malice from the unlawful use of a gun, if you so desire. Of course, on that score, you must also consider the defense's claim already made about justification that Mr. Wright claims a fear and that when Mr. Brodie reached for his pocket that put him in fear, and all those elements, of course, must be weighed on the whole subject. I'm just telling you this in addition to what I told you before and not as a specially emphasized point to be considered by you separately. You may consider the question of a gun as a question of malice."

After the jury had left the courtroom to continue their deliberations, the state again excepted to the court's failure "to charge that the law presumes malice from the use of a deadly weapon." After a short colloquy among the counsel and the court, the jury were brought back into the courtroom and instructed as follows: "Ladies and gentlemen of the jury, while you have been deliberating we have found a Supreme Court case in Connecticut which

discusses this question of the use of a gun. And I think to be absolutely accurate, ladies and gentlemen, I should quote from the case, which is State against Feltovic, 110 Conn. at page 308, which says that where there are no circumstances extenuating the use of a deadly weapon, such as a revolver or a gun, the law implies malice where the unlawful killing is done with a deadly weapon such as a revolver or a gun or a pistol. Now, I was reluctant to bring you back again to say this to you, because this may accentuate that particular capsule from the whole charge that I gave you, and while I now think we have the exact wording by our Supreme Court that the law implies malice from an unlawful killing with a revolver or a pistol, you should also consider all the other things mentioned in my charge to you about the possible defense of self-defense or justification. So don't let this get out of context as one important factor at all, but put it into the whole picture as just one more item to consider. Thank you. You may now deliberate." After the jury had left the courtroom, counsel for the defendant excepted "to the fact that they were brought out twice on one point and that it is going to unduly inflame the minds of the jury at this point."

The court's final instruction to the jury was clearly a correct statement of law on the element of malice. The law does imply malice from the circumstances of a killing, i.e., the use of a deadly weapon, when an unlawful homicide is shown to have been committed and where no circumstances of mitigation, extenuation or excuse appear. *State* v. *Chesney,* 166 Conn. 630, 641, 353 A.2d 783; see *State* v. *Vennard,* 159 Conn. 385, 400, 270 A.2d 837, cert. denied, 400 U.S. 1011, 91 S. Ct. 576,

27 L. Ed. 2d 625; *State* v. *Miller,* 154 Conn. 622, 627, 228 A.2d 136; *State* v. *Jacowitz,* 128 Conn. 40, 44–45, 20 A.2d 470; *State* v. *Simborski,* 120 Conn. 624, 628–29, 182 A. 221; see also Wright, Connecticut Jury Instructions § 696v.

An erroneous statement in a charge to a jury may be cured by a later correct instruction; *Frauham* v. *Berkshire Motor Coach Lines, Inc.,* 115 Conn. 714, 715, 161 A. 668; *Korb* v. *Bridgeport Gas Light Co.,* 91 Conn. 395, 403, 99 A. 1048; which may be made when the jury is called back or returns for further instructions. *Ziskin* v. *Confietto,* 137 Conn. 629, 633, 79 A.2d 816; *Hurlburt* v. *Sherman,* 116 Conn. 102, 107, 163 A. 603. This is particularly true where the court makes an immediate correction. *Craney* v. *Donovan,* 95 Conn. 482, 484, 111 A. 796. The corrected instruction must remove from the minds of the jury any erroneous impression. Maltbie, Conn. App. Proc. § 94. It has been held that a final and definite instruction cured earlier defective statements. *Budovsky* v. *Hadhazi,* 95 Conn. 388, 398, 111 A. 179; see generally, Maltbie, loc. cit., and cases cited therein.

The fact that it was necessary to recall the jury twice in order that they be correctly instructed on the issue of malice cannot be said to have been prejudicial to the defendant in light of the court's careful admonition that the jury were not to emphasize this particular point over any other and the added instruction that when considering that the law implies malice from the use of a deadly weapon, the jury should also consider the defendant's claim regarding extenuating circumstances.

There is no error.

In this opinion the other judges concurred.