STATE OF CONNECTICUT *v.* JOHN REED

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued October 13, 1977—decision released February 28, 1978

*Victor P. Fasano,* special public defender, for the appellant (defendant).

*William F. Gallagher,* special assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Richard P. Sperandeo,* chief assistant state's attorney, for the appellee (state).

LOISELLE, J. The defendant was indicted in 1969 by a grand jury charging him with first degree murder in violation of General Statutes § 53-9.[1] He was found guilty of second degree murder after a trial by jury. From the judgment rendered he has appealed to this court.

From the evidence presented, the jury could have found the following facts. On December 23, 1968, Richard Biondi called Thomas Viola threatening to kill him, the defendant, and others before the end of the year. That evening Viola met the defendant and told him of the threat he had received. The

---

[1] Repealed October 1, 1971.

defendant stated that it was about time they retaliated before one of them got killed. They both went to Viola's home where they picked up an AR-15 automatic rifle and a nine-millimeter pistol. They next went to the home of Ralph Maselli, inviting him to go along with them, but Maselli refused. The defendant and Viola went to the defendant's home where they called Biondi's apartment. When it was determined that the line was busy, the defendant said, "It's a gift, let's go." They then went to the home of Arthur Murgo, where they told him about the threat and discussed the possibility of killing Biondi. Murgo instructed the defendant in the pronunciation of the secret password used by Biondi and his associates. The defendant and Viola left Murgo's home and drove to Fort Hale Park where they tested the machine gun and then drove to Biondi's apartment.

The defendant, armed with the machine gun, and Viola, armed with the pistol, went to Biondi's apartment, knocked on the door, and gave the secret password. When Biondi opened the door, the defendant sprayed Biondi with a burst of machine gun fire. Biondi had three massive wounds, any one of which could have caused his instantaneous death.

The defendant and Viola left Biondi's apartment and went to the defendant's apartment where the defendant called Maselli to tell him he had "hit pay dirt." They thereafter went to Maselli's home and gave him the two weapons, the defendant again telling Maselli that he had killed Biondi. Later Maselli hid the guns in the woods. The next morning Murgo picked up Maselli and drove to the woods where the guns were hidden. Maselli emptied the machine gun by firing it. They got back into

the car, disassembled the machine gun into two parts and threw each part into different bodies of water. Murgo took the pistol with him. A few days later the defendant described to Maselli how he got Biondi to open the door and how he shot Biondi.

Further facts that the jury could have found are stated with the discussion of the various errors claimed by the defendant. They are grouped as follows: (1) the attack on the jurisdiction of the court; (2) the petition pro hac vice of Attorney James J. Hogan; (3) rulings by the trial court; and (4) the charge to the jury.

## I

Prior to trial, the defendant claimed that the court was without jurisdiction over the defendant. The facts, found by the court and stipulated to by the parties, indicate that the defendant had been indicted by a grand jury on this charge in 1969. Subsequently, the state surrendered the defendant to the United States government to answer to federal charges of armed robbery. At the time the defendant filed his plea, he had been convicted of the federal charge and an appeal from that conviction was pending. The defendant contends that since the federal case had not yet concluded, he was still within federal court jurisdiction and could not be tried on state charges.

While it is true that, pursuant to the supremacy clause of the United States constitution, the federal government is under no obligation to surrender a person within its exclusive jurisdiction upon the demand of a state, the United States may waive its immunity and consent to have prisoners in its custody turned over to the state. *Ponzi* v. *Fessenden*, 258 U.S. 254, 260, 42 S. Ct. 309, 66 L. Ed.

607; *Tarble's Case,* 80 U.S. (13 Wall.) 397, 20 L. Ed. 597; *Ableman* v. *Booth,* 62 U.S. (21 How.) 506, 16 L. Ed. 169; *Thomas* v. *Levi,* 422 F. Sup. 1027 (E.D. Pa.). As the United States Supreme Court enunciated in *Ponzi* v. *Fessenden,* supra, 260, "[The defendant] may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. . . . Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it and of its representatives with power to grant it." See also annots., 22 A.L.R. 886, 62 A.L.R. 279; 21 Am. Jur. 2d, Criminal Law, § 382; 1 Wharton, Criminal Procedure (12th Ed.) § 16.[2] The Superior Court had proper jurisdiction over the defendant for the purposes of this trial.

## II

Prior to trial, local counsel petitioned for permission to have James J. Hogan, a member of the Florida bar and of various federal bars, appear pro hac vice for the defendant in this trial. The state conceded that Hogan was a qualified attorney who had previously represented the defendant in another criminal case and who had been instrumental in the defendant's surrender to the state court. The petition was denied, but Hogan was granted permission to sit at the counsel table in order that local counsel and the defendant might consult with him. Subsequently, a motion by the

[2] To the same effect is *Chapman* v. *Scott,* 10 F.2d 156 (D. Conn.), affirmed 10 F.2d 690 (2d Cir.), cert. denied, 270 U.S. 657, 46 S. Ct. 354, 70 L. Ed. 784, a case in which the facts reveal that Gerald Chapman was transferred from federal jurisdiction to the state of Connecticut where he was subsequently tried and convicted of murder in the first degree. *State* v. *Chapman,* 103 Conn. 453, 130 A. 899.

state to open the hearing on the petition was granted. The state revealed to the court that it had acquired new information indicating that Hogan represented Arthur Murgo, an important state's witness, in an unrelated criminal matter pending in federal court. In addition, it was shown that Hogan was scheduled to be on trial in a federal court at about the time the defendant's state trial was to commence. Neither of these facts had previously been revealed to the court. Hogan explained that he had forgotten or was unaware of the conflicting trial dates, and, as to the potential conflict of interest, he urged that he had consulted with Murgo and was of the opinion that it was neither unethical nor prejudicial to Murgo or to the defendant to act as counsel to the defendant. The court again denied the petition, at this point refusing Hogan permission to sit at the counsel table during the trial.

While the sixth amendment right to the effective assistance of counsel in criminal prosecutions "implies a degree of freedom to be represented by counsel of defendant's choice, this guarantee does not grant the unconditional right to representation in a state court by a particular out-of-state attorney." *Ross* v. *Reda,* 510 F.2d 1172, 1173 (6th Cir.). It is well settled that "permission to a nonresident attorney, who has not been admitted to practice in a court, to appear pro hac vice in a case there pending is not a right but a privilege, the granting of which is a matter of grace resting in the sound discretion of the presiding judge." *Thomas* v. *Cassidy,* 249 F.2d 91, 92 (4th Cir.), cert. denied, 355 U.S. 958, 78 S. Ct. 544, 2 L. Ed. 2d 533; *Silverman* v. *Browning,* 414 F. Sup. 80 (D. Conn.), affirmed, 429 U.S. 876, 97 S. Ct. 228, 50 L. Ed. 2d

162. The courts of each state have power and control over the attorneys permitted to practice within the state system; *Cohen* v. *Hurley,* 366 U.S. 117, 81 S. Ct. 954, 6 L. Ed. 2d 156; limited principally by the constitutional mandate that qualifications have a "rational connection with the applicant's fitness or capacity to practice law." *Schware* v. *Board of Bar Examiners,* 353 U.S. 232, 239, 77 S. Ct. 752, 1 L. Ed. 2d 796.

In the present case, sufficient justification existed to exclude a foreign attorney from practice in a specific local case. *Ross* v. *Reda,* supra. Attorney Hogan, at the time his petition was being heard, failed to reveal the potential conflict which existed by virtue of his representation of a state's witness in a separate criminal proceeding. When the issue was finally brought to the court's attention, Hogan stated that he had consulted with Murgo and that he himself felt no ethical problems existed. There is nothing in the record, however, which indicates that the defendant himself was made aware of the situation, or that, when once made aware of it, he expressly assented to it.

A potential conflict of interest, such as this, may vitiate the effective assistance of counsel. *People* v. *Stone,* 25 App. Div. 2d 950, 270 N.Y.S.2d 559. Although the right to the effective assistance of counsel is "fundamental"; *Argersinger* v. *Hamlin,* 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530; it may be waived. A valid waiver of a constitutional right, however, must be knowing and intelligent, accomplished with sufficient awareness of the relevant circumstances and likely consequences. *Brady* v. *United States,* 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747; *Johnson* v. *Zerbst,* 304 U.S. 458, 58

S. Ct. 1019, 82 L. Ed. 1461; *United States* v. *Garcia,* 517 F.2d 272 (5th Cir.). Under circumstances such as those existing in this case, the fact that a defendant, with full awareness of the circumstances and consequences of the potential conflict, waives his right to the effective assistance of counsel must appear on the record in clear, unequivocal, unambiguous language. *United States* v. *Garcia,* supra, 276. No such waiver is evident in this case, nor, indeed, is there any indication that the defendant was fully consulted as to the potential conflict. See Code of Professional Responsibility EC 5-19, Practice Book, p. 27. It is easy to say in hindsight that the defendant, who is now claiming his right to counsel, waived any possible claims of ineffective assistance of counsel pertaining to the potential conflict of interest. At the time of the rehearing on Hogan's petition, however, the defendant did not claim such a waiver. Had the court not denied the petition, the defendant could now claim ineffective assistance. Under these circumstances, and particularly in light of Hogan's failure fully to inform the court of his potential ethical and temporal conflicts, the court did not err in denying the pro hac vice petition. See *Ross* v. *Reda,* 510 F.2d 1172 (6th Cir.)[3]

### III

The defendant argues that the state's evidence, directed at showing wilful, deliberate, premeditated murder, pursuant to the requirements delineated

---

[3] It should be noted that at the time of the hearing on Hogan's pro hac vice petition, the court had not yet promulgated Practice Book § 15A, the rule now regulating the grant of such petitions. See also *Silverman* v. *Browning,* 414 F. Sup. 80 (D. Conn.), affirmed, 429 U.S. 876, 97 S. Ct. 228, 50 L. Ed. 2d 162; *Silverman* v. *St. Joseph's Hospital,* 168 Conn. 160, 363 A.2d 22; Code of Professional Responsibility EC 3-9, Practice Book, p. 20.

for first degree murder in General Statutes § 53-9,[4] if believed, would warrant only a jury verdict of guilty of murder in the first degree. Because the jury found the defendant guilty of murder in the second degree, the defendant urges that the state's case was not believed and that the court erred in failing to set aside the verdict.

General Statutes § 53-9, after enumerating the elements of first degree murder, provides in pertinent part: "[A]ll other kinds of murder shall be murder in the second degree . . . but the jury before which any person indicted for murder is tried may find him guilty of homicide in a less degree than that charged." Pursuant to this provision, a jury is compelled to find the specific intent of wilful, deliberate and premeditated murder for a conviction of first degree murder. While voluntary intoxication is not a defense to a criminal charge, it may be relevant to negate the element of specific intent. *State* v. *Dennis,* 150 Conn. 245, 250, 188 A.2d 65. In *State* v. *Dortch,* 139 Conn. 317, 323–24, 93 A.2d 490, this court explicitly approved a charge to the jury which allowed that intoxication may so affect the operation of the mind as to render one incapable of forming the requisite intent for a conviction of first degree murder, thereby reducing the crime to murder in the second degree.

In the present case, there was significant evidence that the defendant was intoxicated at the time of the shooting. Nearly nine pages of the state's appendix is devoted to the cross-examination of Arthur Murgo concerning the defendant's intoxication, Murgo having previously, on direct examina-

---

[4] See footnote 1, supra.

tion, testified that he, Viola and the defendant had "consumed a lot of liquor" at Murgo's home, leaving the defendant barely able to repeat the password through his slurs. Under these circumstances the jury were entitled, pursuant to General Statutes § 53-9, to find the defendant guilty of second degree murder, and the court did not err in refusing to set aside the verdict. See *State* v. *Manning,* 162 Conn. 112, 123, 291 A.2d 750.

The defendant claims that because he was not given an opportunity to interview Arthur Murgo, an important prosecution witness, he was denied due process according to the principle enunciated in *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215. The *Brady* case held (p. 87) that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Important to the court's holding "are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." *Moore* v. *Illinois,* 408 U.S. 786, 794–95, 92 S. Ct. 2562, 33 L. Ed. 2d 706; *State* v. *Olds,* 171 Conn. 395, 400, 370 A.2d 969; *State* v. *Moynahan,* 164 Conn. 560, 593, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219.

The record indicates that the defendant's pretrial motion to interview Murgo, if he were willing to be interviewed, was granted by the court. At the trial, on cross-examination, Murgo, when asked whether the possibility of such an interview had been mentioned to him, denied knowledge of any such discussion. The defendant then moved for a dismissal

of the charges on the grounds that his due process rights had been violated. Responding to the state's inquiry as to whether he would have assented to an interview had he been asked, the witness stated that it was "possible" had there been supervision. The state then submitted a witness who testified that he was present when Murgo was asked if he would allow an interview and that Murgo had responded in the negative. Murgo again testified that he had no such recollection, but that he was unsure. Upon this evidence, the court denied the defendant's motion, reasoning that it had one witness, Murgo, who could not state whether or not he had been asked about an interview, and one witness who recalled that Murgo had indeed been asked. Therefore, according to the usual tests of credibility, it believed the witness who asserted that Murgo had been informed. The defendant then moved for a mistrial, claiming that the witness had expressed willingness to be interviewed by him. The court offered to allow the defendant to renew his motion, but Murgo expressed unwillingness to be interviewed at that time.

In the present case, the court, in believing the state's witness that Murgo had been asked whether he would be interviewed by the defense, effectively determined that the state had not suppressed material evidence. Since it is for the court to rule on a motion to dismiss the charges or a motion for a mistrial; *State* v. *Ralls,* 167 Conn. 408, 419, 356 A.2d 147; the court was within its discretion in weighing the credibility of the pertinent witnesses. See *State* v. *White,* 169 Conn. 223, 242, 363 A.2d 143. Ordinarily, a ruling based upon the credibility of witnesses will not be changed. Maltbie, Conn. App. Proc. § 156.

Because the court properly found that the state had complied with the order allowing the defense to interview Murgo on the condition that he consented to it, there was no suppression of evidence and consequently no due process violation according to the tenets of *Brady* v. *Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215. See also *State* v. *Marsh,* 168 Conn. 520, 529, 362 A.2d 523. It is further worthy of note that the evidence the defense anticipated receiving from Murgo pertained to the issue of intoxication, an issue amply covered during the trial, and, given the jury's verdict of second degree rather than first degree murder, apparently one determined in the defendant's favor. Under these circumstances it can hardly be said that the court erred in denying the defendant's motions.

The following eight claims of error pertain to the court's rulings relative to the defendant's cross-examination of various witnesses for the state. Where the record includes long excerpts of testimony and colloquy, it is difficult to set forth adequately the court's ruling, discuss the pertinent law, and keep this opinion within reasonable bounds. Each of the assigned errors is discussed, although necessarily without great detail where, although of great consequence to the parties, a ruling is of but little general import.

On direct examination, Murgo, a state's witness, testified that on the night of the murder the defendant consumed a lot of liquor. On cross-examination, the defendant sought to expose certain inconsistencies in the testimony, since Murgo had stated that the defendant was "drunk," "drinking heavily," "slightly drunk." The court sustained the state's objection to this line of inquiry as "argumentative,"

and the defendant urges that the curtailing of this questioning deprived the defendant of his right to cross-examination. As a rule, the extent of a cross-examination is within the court's discretion, although it should be liberally allowed. *State* v. *Green,* 172 Conn. 22, 26–27, 372 A.2d 133; *Fahey* v. *Clark,* 125 Conn. 44, 47, 3 A.2d 313. Nonetheless, the court may restrict a cross-examination to evidence which is competent, material, and relevant, and " 'when the examination has been carried as far as will serve to develop the issues involved and aid the search for the truth, we approve of the trial court curtailing the length and the limit of examinations.' " *Fahey* v. *Clark,* supra, 46. The record reveals that the defendant was belaboring his point, seeking contradiction in minute verbal distinctions. Furthermore, although the court sustained the state's motion, the appendix to the state's brief reveals that counsel was allowed to continue his questioning.

In an effort to impeach Murgo's testimony, the defense sought to establish that the witness' testimony was motivated by promises of money and immunity. To the questioning of Murgo as to whether Maselli, another state's witness, had told him that part of the immunity agreement included payment of monies recovered from a bank robbery, the court sustained the state's objection on the understanding that the conversation between Murgo and Maselli occurred after Murgo had submitted his signed statement to the police. In effect, the court's ruling found the line of questioning to be irrelevant, since the conversation with Maselli occurred after Murgo had decided to corroborate Maselli's own statements. Furthermore, the record as a whole reveals that the issue of motive was

thoroughly covered. Although the defendant's right to cross-examination is to be carefully guarded, the trial court has a reasonable discretion to control the extent of such examination when it is aimed at attacking credibility. *State* v. *Luzzi,* 147 Conn. 40, 47, 156 A.2d 505; *State* v. *Dortch,* 139 Conn. 317, 325, 93 A.2d 490.

On cross-examination of Maselli, a state's witness, the defense sought to elicit from the witness an agreement that his signed statement to the police that no threats or promises had induced his cooperation was, in fact, untrue. The witness sought to explain his answer and the defense moved that the explanation be stricken. The defendant now claims that the court's failure to strike the nonresponsive answers prevented the defense from obtaining from the witness additional falsities contained in his prior statement. This claim defies logic, for the court, while it refused to strike the answer, did not limit this examination. As this court emphasized in *State* v. *Villafane,* 171 Conn. 644, 676, 372 A.2d 82, " '[T]he decision whether to cross-examine a witness is almost always a . . . tactical one.' . . . When a party chooses not to cross-examine a witness in order to avoid the possibility of eliciting harmful testimony, his right to confront and cross-examine that witness as guaranteed by the sixth and fourteenth amendments of the United States constitution is in no way abridged." Further, every witness has a natural right to explain and clarify his or her testimony. See, e.g., *Berger* v. *Guilford,* 136 Conn. 71, 83, 68 A.2d 371; *Bredow* v. *Woll,* 111 Conn. 261, 264, 149 A. 772.

On redirect examination, the state, apparently for purposes of rehabilitation, questioned the witness Maselli as to the circumstances surrounding

his statement to the police, inquiring with particularity into whether he had been advised of his constitutional rights before signing the statement. The defendant claims that this line of inquiry was irrelevant to the previous cross-examination as to the falsity in his statement that the statement was given without any threats or promises. The question of relevancy must be determined according to reason and judicial experience. *State* v. *Carnegie,* 158 Conn. 264, 273, 259 A.2d 628, cert. denied, 396 U.S. 992, 90 S. Ct. 488, 24 L. Ed. 2d 455; *State* v. *Towles,* 155 Conn. 516, 523, 235 A.2d 639. That determination requires the exercise of the court's discretion. *State* v. *Blyden,* 165 Conn. 522, 531, 338 A.2d 484. It is within the court's discretion to allow on redirect examination questions relevant to matters in the witness' testimony which have been weakened or obscured by the cross-examination. *Grievance Committee* v. *Dacey,* 154 Conn. 129, 151, 222 A.2d 339. On cross-examination, the defendant had challenged the veracity of the witness' statement to the police. The state sought to explain the circumstances of the statement. " 'The force of a contradictory statement must depend very materially upon the circumstances under which it was made and the influences at the time bearing upon the witness.' " Wigmore, Evidence (3d Ed.) § 1044. On these facts it cannot be said that the court abused its discretion in allowing the state to pursue its inquiry.

On redirect examination, the state asked Maselli, "Would it be fair to say that you were attempting to help [the defendant] at that time [in allegedly disposing of the weapons]?" The question was excluded as calling for a conclusion. The state then asked, "Why did you dispose of the guns?" and the

defendant answered, "[T]o help Jackie Reed." The defendant claims this question was leading and resulted in a conclusion invading the jury's province. While the form of the question is disapproved, the jury's province was not invaded. The defendant gave an explanation of his own motives and it was for the trier of fact to determine whether that explanation was to be given credence. *Klein* v. *Chatfield,* 166 Conn. 76, 347 A.2d 58.

The defendant further objects to the state's questioning of Maselli on redirect as to whether he knew of the motives for the murder. The questioning pertained to testimony given on cross-examination and, given the witness' response that he knew of no other motive than that which had already come out, it did not lead to hearsay and gossip. The court did not err in overruling the defendant's objection.

In cross-examining Viola, a key state's witness in connecting the defendant with the crime, the defense sought to attack the witness' credibility on the ground that in an earlier statement, made in 1970, he had failed to mention various facts elicited on direct examination. The defendant claims that the effort to impeach Viola's credibility was unduly restricted. The record reveals, however, that the court allowed the questioning, urging primarily that the defense accept the answers. In fact, the witness admitted to an earlier omission. While it is clearly proper to attack a witness' credibility by evidence of his materially inconsistent statements; *State* v. *Vega,* 163 Conn. 304, 307, 306 A.2d 855; *State* v. *Keating,* 151 Conn. 592, 597, 200 A.2d 724, cert. denied, sub nom. *Joseph* v. *Connecticut,* 379 U.S. 963, 85 S. Ct. 654, 13 L. Ed. 2d 557; this can only be done if the court is satisfied that the prior

statements are in fact inconsistent. *State* v. *Chesney,* 166 Conn. 630, 636, 353 A.2d 783; 3A Wigmore, Evidence (Chadbourn Rev.) § 1040. In the present case, the evidence sought constituted not a statement inconsistent with testimony given on direct examination, but rather an omission, a failure to state certain facts at a prior time. "If a former statement fails to mention a material fact presently testified to, which it should have been natural to mention in the prior statement, the prior statement is sufficiently inconsistent." *State* v. *Chesney,* supra, 636; McCormick, Evidence (2d Ed.) § 34; 3A Wigmore, Evidence (Chadbourn Rev.) § 1042. In accordance with these principles, the court allowed reasonable questioning, exercising no abuse of discretion in the controls exerted to limit the cross-examination. *State* v. *Dortch,* 139 Conn. 317, 325, 93 A.2d 490.

The defense sought to introduce evidence that Viola, a state's witness, had shot someone on another, unrelated occasion. Because Viola had acted in self-defense, the case had been nolled. Consequently, the evidence was inadmissible as an attack on Viola's credibility. *State* v. *Annunziato,* 169 Conn. 517, 525, 363 A.2d 1011. The defendant submitted that the evidence tended to show that Viola was "quick" to use a gun. The court did not err in excluding this evidence, since it was irrelevant and remote. *State* v. *Carbone,* 172 Conn. 242, 262, 374 A.2d 215; *State* v. *Mahmood,* 158 Conn. 536, 540, 265 A.2d 83.

Following the testimony of Bernard Lawlor, a county detective called as a state's witness to testify that Murgo had been asked whether he would submit to an interview with the defense and that he had explicitly said "no," the defense requested

that Murgo be returned to the stand for further cross-examination to impeach his credibility. The court's denial of this request did not constitute error. "A trial court has wide discretion both as to the allowance of questions involving relevancy and remoteness and as to the scope of cross-examination to show contradictory statements." *State* v. *Keating,* 151 Conn. 592, 597, 200 A.2d 724. Murgo had been cross-examined on the subject previously, and the statement given by him on direct examination which the defendant sought to impeach pertained to a collateral matter irrelevant to the guilt or innocence of the accused. See, e.g., *State* v. *Wilson,* 158 Conn. 321, 324, 260 A.2d 571.

Finally, the defendant moved to dismiss the case on the ground that the state had failed to disclose to the defense remnants of a nine-millimeter bullet found in the victim's apartment, and a tape recording of Maselli, in contravention of *Brady* v. *Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215. The prosecution claimed that it did not have possession of any tape recording. As was the state's attorney's duty, he submitted the bullet fragments into evidence. *State* v. *Mitchell,* 169 Conn. 161, 166, 362 A.2d 808; *State* v. *Moynahan,* 164 Conn. 560, 568, 325 A.2d 199. Nothing in the record or in the defendant's brief supports the contention that these fragments were in any way favorable to the defense or material to this particular case. Therefore, no due process violation in contravention of *Brady* is evident.

## IV

The defendant urges that the court's charge inadequately covered the issues raised by the defendant's written requests to charge. "A charge to the jury

is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case." *Amato* v. *Desenti,* 117 Conn. 612, 617, 169 A. 611; *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203. The charge is to be read as a whole and individual instructions are not to be judged in "artificial isolation" from the overall charge. *State* v. *Holmquist,* 173 Conn. 140, 151, 376 A.2d 1111. " 'The test to be applied to any part of a charge is whether the charge considered as a whole presents the case to the jury so that no injustice will result.' " *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391; *State* v. *Mullings,* 166 Conn. 268, 274-75, 348 A.2d 645.

The defendant requested the court to charge the jury that the testimony of Murgo, Maselli and Viola should be viewed with caution in light of their past records, grants of immunity, and acts inconsistent with veracity. In charging the jury, the court adequately covered these issues, urging the jury to "look with particular care upon the testimony of an accomplice," considering in this case the question of moral turpitude, the grants of immunity, and those other interests which may have affected their testimony. The charge provided the jury with sufficient warning. The fact that the charge did not specifically follow that requested by the defendant does not constitute error. *State* v. *Avila,* 166 Conn. 569, 574, 353 A.2d 776; *State* v. *Alterio,* 154 Conn. 23, 27, 220 A.2d 451.

The defendant urges that the court's instruction on corroboration was misleading in that it told the jury (1) that corroboration for the accomplices' story existed, and (2) that the finding of the gun

barrel in Branford and the shell casings in East Haven could be considered corroboration of their story in all respects. The defendant's interpretation of the charge is simply erroneous. The court explicitly stated that the finding of such evidence was corroboration of "parts of their story." The court did not resolve questions of credibility, of the weight to be accorded such evidence, or of the conclusions to be drawn from the conflicting evidence. The court's comments on the evidence pertaining to corroboration were limited, and specifically left the whole issue of corroboration and the issue of credibility to the jury. "The court simply recited some of the evidence from which inferences could be drawn. . . . [Such] comments have not been shown to have been unfair or misleading in any way." *State* v. *Schoenbneelt,* 171 Conn. 119, 124–25, 368 A.2d 117; *State* v. *Roy,* supra, 41.

The defendant claims that the court's charge that the immunity granted Murgo and Maselli "must not be weighed against the state" was unduly broad and, standing alone, clearly wrong. In fact, the statement did not stand alone, but was immediately followed by the comment that such immunity "does not bear upon the guilt or innocence of the accused and should not enter your deliberations except that you may consider it on the issue of the credibility of the witness." The court adequately stated the law. One who has been granted immunity is not an incompetent witness; General Statutes § 54-47a; although the fact of immunity may bear upon the weight given the testimony of the witness granted immunity. See 2 Wharton, Criminal Evidence (12th Ed.) § 362; 81 Am. Jur. 2d, Witnesses, § 666; annot., 120 A.L.R. 751. If we take the charge as a whole, it was not reasonably probable that the jury

were misled, particularly since these statements came in the context of remarks cautioning the jury as to the weight to be accorded the testimony of these witnesses in light of their own interests.

Upon completion of the charge to the jury, the defendant objected to the court's statements that the defendant had disclaimed the defense of insanity and that he had claimed that he was intoxicated at the time of the murder. The court recalled the jury and corrected its charge, explaining that the defendant left it to the state to prove each and every element of the crime charged, including the element of sanity, and that the evidence of intoxication developed from the state's case, the defendant claiming that he was not with the state's witnesses at all on the evening in question. When asked by the court whether the correction was sufficient, counsel for the defendant answered, "That is right." Since no exception was taken to the corrected charge, no claim of error is properly before this court. See Practice Book § 249; *Terrazzano* v. *Sporna,* 157 Conn. 39, 41, 244 A.2d 599. In spite of this, it is worth noting, as did this court in *State* v. *Vincenzo,* 171 Conn. 240, 243, 368 A.2d 219, that "[t]he portion of the charge to which exception was taken was specifically and explicitly corrected after the defendant excepted to it and no further exception was taken. In view of the very specific correction, we fail to see how the jury could have been misled." See also *State* v. *Wright,* 169 Conn. 256, 262, 362 A.2d 983; *State* v. *Grimes,* 154 Conn. 314, 318, 228 A.2d 141.

Finally, the defendant claims that the court's supplemental charge on credibility and reasonable doubt, given in response to the jury's written ques-

tion as to their function when considering conflicting statements of two witnesses and whether that constitutes reasonable doubt, was inadequate in that it failed to state explicitly that "if there is a reasonable construction of guilt or innocence, that would be a basis for reasonable doubt." The supplemental charge was correct and articulate, fully covering the issues. In the main charge, the court had particularly stressed that "if upon any reasonable hypothesis the evidence warrants a construction favorable to the accused, he is entitled to and must be given the benefit of it by his triers." Both the main and supplemental charges are to be considered as a whole. *Maciejewska* v. *Lombard Bros., Inc.,* 171 Conn. 35, 40, 368 A.2d 206; *State* v. *Edwards,* 163 Conn. 527, 537, 316 A.2d 387. The applicable test is whether, in its entirety, the charge fairly presents the case to the jury. *State* v. *Edwards,* supra. Viewed in this light, the court's charge on these issues was neither erroneous nor incomplete.

There is no error.

In this opinion the other judges concurred.